**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ROBIN ESKENAZI-MCGIBNEY, JOHN
MCGIBNEY, ROBIN ESKENAZI-MCGIBNEY
and JOHN MCGIBNEY for minor JOSHUA
ESKENAZI-MCGIBNEY,

                Plaintiffs,

        -against-

CONNETQUOT CENTRAL SCHOOL
DISTRICT, EASTERN SUFFOLK BOCES,
ALAN B. GROVEMAN, ROBERTA KEMPF,
WILLIAM MILLER, GREGORY J. MURTHA,
NANCY SMALLING, JOSETTE CELABERTI,
KAREN FLANNIGAN and DONALD
GAMORANO, in their official and individual
capacities pursuant to § 1983 NYEL 290 *et seq.*,

                Defendants.

------------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
14-cv-1591 (ADS)(GRB)

**APPEARANCES:**

**Scott Michael Mishkin, P.C.**
*Attorneys for the Plaintiffs*
One Suffolk Square
Suite 520
Islandia, NY 11749
        By:  Scott M. Mishkin, Esq.
             Kyle T. Pulis, Esq., Of Counsel

**Devitt Spellman Barrett, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11788
        By:  Joshua S. Shteierman, Esq., Of Counsel

1

**Sokoloff Stern LLP**
*Attorneys for the Defendants*
179 Westbury Avenue
Carle Place, NY 11514
        By:  Adam I. Kleinberg, Esq., of Counsel

**SPATT, District Judge**.

 On March 10, 2014, the Plaintiffs Robin Eskenazi-McGibney ("RM"), John McGibney ("JM"), and RM and JM for their then minor child Joshua Eskenazi-McGibney ("JEM")(collectively the "Plaintiffs") commenced this action against the Defendants Connetquot Central School District (the "District"), Eastern Suffolk BOCES ("BOCES"), the District Superintendent Alan B. Groverman ("Groverman"), the Assistant Principal of the BOCES facility attended by JEM, Roberta Kempf ("Kempf"), the District Transportation Supervisor William Miller ("Miller"), the Principal of the Connetquot High School Gregory J. Murtha ("Murtha"), the Principal of the BOSES facility attended by JEM, Nancy Smalling ("Smalling"), BOCES teacher Josett Celaberti, teacher Karen Flannigan ("Flannigan"), and the District Administrator for Special Education Donald Gamorano ("Gamorano").

As against the District and BOCES, the Plaintiffs asserted claims for discrimination and retaliation in violation of Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq*., 42 U.S.C. § 1983; the Dignity for All Students Act, L. 2010, ch. 482, § 2, New York Education Law § 10 *et seq.*; *prima facie* tort; negligence; special damages for gross negligence; negligent hiring, retention, and supervision of the District's employees and agents.

As against the Individual Defendants in their official and individual capacities, the Plaintiffs asserted claims under 42 U.S.C. § 1983; New York Education Law § 290 *et seq*., *prima facie* tort; negligence; and special damages for gross negligence.

2

On April 3, 2014, BOCES, Kempf, Smalling, and Celaberti moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

On May 30, 2014, the District, Groveman, Miller, Murtha, Flannigan, and Gamorano also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

On August 8, 2014, the Plaintiffs cross-moved pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint, even though they maintain in the first instance that such leave is not necessary because the Defendants have yet to answer the original complaint. Rule 15 of the Federal Rules of Civil Procedure sets forth the rules governing amended and supplemental pleadings, and provides that, if more than 21 days has elapsed after a defendant has served a motion to dismiss under Rule 12(b), a party may amend its pleading only with leave of court or with the opposing party's written consent. Fed. R. Civ. P. 15.

In the instant matter, in order to amend the complaint, the Plaintiffs must first obtain leave of the Court because the Defendants have not given such consent, and more than 21 days have elapsed since the motions to dismiss were filed. Cf. Azkour v. Haouzi, No. 11 CIV. 5780 (RJS)(KNF), 2012 WL 3667439, at *2 (S.D.N.Y. Aug. 27, 2012)(recounting the prior procedural history of the case, including the determination that the Plaintiff's motion to amend his second-amended complaint was "was unnecessary, because, at the time he filed his amended pleading '1) 21 days had not elapsed after service of any of his pleadings-he had not served any of his pleadings on any defendant; and 2) 21 days had not elapsed after a responsive pleading or Rule 12(b), (e), or (f) motion had been served . . . .'").

Nonetheless, the Court exercises its discretion to grant the Plaintiffs' motion for leave to file the amended complaint. Rule 15(b) provides that leave to amend pleadings should be freely given when justice so requires. "When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile." Gorman v. Covidien Sales, LLC, No. 13 CIV. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014).

Here, the Court finds that the proposed amended amendment is not the product of inordinate delay or bad faith on the part of the Plaintiffs. Indeed, the Court notes that they primarily seek to remove certain causes of actions and certain defendants. Further, the Defendants will not be prejudiced if leave to amend were granted, as the parties have not conducted discovery nor has there been an initial conference.

Not surprisingly, the Defendants limit their opposition to the Plaintiffs' cross-motion for leave to file an amended complaint to the argument that any amendments would be futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Annunziato v. Collecto, Inc., 293 F.R.D. 329, 333 (E.D.N.Y. 2013)(citing Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002)). "Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted." Waltz v. Board of Educ. of Hoosick Falls Cent. School Dist., No. 1:12–CV–0507 (GTS)(CFH), 2013 WL 4811958, *4 (N.D.N.Y. Sept. 10, 2013)(citations omitted).

Here, as the Defendants had sufficient opportunity to respond to the proposed amended complaint, the merits of the Defendants' motions to dismiss will be considered in light of the amended complaint. See Schwartzco Enterprises LLC v. TMH Mgmt., LLC, No. 14-CV-1082

(ADS)(GRB), 2014 WL 6390299, at *1 (E.D.N.Y. Nov. 17, 2014)("Where, as here, the Plaintiff seek to amend his complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion [to dismiss] as moot to considering the merits of the motion in light of the amended complaint.'")(citations omitted); see Clark v. Dematic Corp., No. 5:14-CV-750 (DNH), 2014 WL 6387166, at *2 (N.D.N.Y. Nov. 14, 2014).

## I.     BACKGROUND

Unless otherwise stated, the following facts are drawn from the amended complaint, and construed in a light most favorable to the non-moving parties on the motions to dismiss, namely the Plaintiffs.

A.  The Factual Allegations

At all times relevant to this action, JEM was a student at Connetquot High School and BOCES.  RM is JEM's mother and JM is his father.

JEM, eighteen years old at the time of the filing of the amended complaint, was diagnosed with a number of learning disabilities at a young age.  For example, JEM has been clinically diagnosed with attention deficit hyperactivity disorder ("ADHD").

As a result of his learning disabilities, JEM was required to attend special education courses at both Connetquot High School and BOCES.  During the 2012/2013 school year, JEM, then seventeen years old, was enrolled in second and third grade courses for mathematics, science, and social studies.

In or about September 2012, while attending BOCES, a classmate, Chris, approached JEM and, without provocation, struck him.  Upset, JEM reported this incident to RM and JM.

As RM and JM believe this to be a one-time incident, they did not report it to any school officials, but rather telephoned Chris's mother and advised her as to what had transpired.

In or about November 2012, while on a school trip to a movie theater with students from the District and BOCES, Chris again approached JEM and, without provocation, struck him. Upset, JEM reported this incident to his parents that night.

RM immediately contacted one of JEM's friends, who had witnessed the incident, and he confirmed that Chris approached JEM and hit him for no reason. RM subsequently told JEM to report the incident to Celaberti, JEM's BOCES teacher, the following day.

JEM reported the incident to Celaberti. RM contacted Celaberti to confirm that JEM had reported the incident to her. Celaberti allegedly stated that she would take care of the situation, but that, in the interim, RM should notify the District, as well as the bus drivers.

According to the Plaintiffs, Celaberti failed to take any action in response to JEM's complaint, and failed to notify any other school officials about what had taken place.

RM later contacted Gamarano and Flannigan to advise them both of the September and November 2012 incidents involving Chris and JEM. Gamarano and Flannigan assured RM that they would take care of the situation. Gamarano and Flannigan advised Murtha, but apparently no further action was taken in response to the Plaintiffs' complaints. In fact, Chris remained in JEM's classes as both the High School and BOCES, and was not suspended, disciplined, or separated from JEM.

Chris also allegedly verbally harassed JEM and threatened him on multiple occasions. For example, during that school year, Chris approached JEM on a number of occasions and threatened him and RM's life, stating "I'm gonna fucking kill you and your mother," and "I hate

you and your mother." JEM became emotional from this verbal harassment and the threats and was fearful of Chris causing harm to him and/or RM.

Despite the Plaintiffs' complaints to both BOCES and District administrators, the verbal and physical abuse by Chris continued. In or about March 2013, while JEM was sitting in a BOCES class engaged in conversation with a friend, Chris approached JEM and hit him again. Later that day, JEM returned home from school and was so emotional about what had transpired that he cried uncontrollably, banged on the walls, and became irate.

JEM and his friend then told RM and JM about this latest incident, and advised them that JEM had reported the incident to the assistant teacher in charge of the classroom that day.

The next day, RM contacted Kempf and advised her of the September and November 2012 incidents, the continued verbal abuse, and also the incident that took place the day before.

RM questioned Kempf as to why nothing had been done over the course of the previous seven months to provide JEM with a harassment-free environment. Kempf simply responded that she would look into it and to call her back the following Monday. However, Kempf allegedly failed to take any action. When RM did not receive a phone call on Monday from Kempf, she called Kempf again and was told that he was in a meeting.

Soon thereafter, RM contacted Lou Malerba, the head of the Special Education Department at the high school, and asked him what was being done in response to the various incidents. He responded that he would look into it.

Despite the Plaintiffs' continued complaints to the District and BOCES, the harassment and verbal abuse by Chris continued.

Throughout March and April 2013, RM continued to leave messages for Celaberti seeking updates about the classroom and to follow up on her complaints. However, Celaberti failed to return any of RM's phone calls.

In or about April 2013, Nancy Smalling, the Principal of the BOCES facility, contacted RM and advised her that Celaberti had been directed to cease speaking to RM or JM, and that any requests for information would have to go through Smalling.

RM viewed this as retaliation for advocating on behalf of her son, as other parents were permitted to speak with their children's teachers. RM explained to Smalling that it was essential for her to be able to communicate with Celaberti, as he had first-hand knowledge of the situation involving JEM and Chris.

JEM was profoundly disturbed by the threats from Chris to the point that he no longer wanted to attend school each day, could not focus on his school work, and was living in fear each time that he left for school in the morning.

One morning, a day after Chris had threatened JEM's life on the bus, REM went to the bus stop, entered the bus, and explained everything that had happened to the bus driver. She then turned to Chris and told him to stay away from her son.

The Plaintiffs maintain, upon information and belief, that the only action that the District had taken was separating JEM and Chris on the bus, but that proved to be insufficient, as Chris continued to harass JEM.

Shortly after the bus incident, RM received a call from Principal Murtha in which he advised RM that she was prohibited from going to the bus stop, from entering the bus, and from going to school. In addition, RM and JM received a letter from the high school's security to a similar effect.

RM viewed this letter from Principal Murtha as further retaliation for her advocating on behalf of her son, as upon information and belief, the parents of other students were not prohibited from going to the bus stop or to the school.

In June 2013, while waiting for the bus to go home from BOCES, Chris approached JEM and said: "I'm gonna fucking kill you." JEM again became emotional and fearful of his life. When JEM returned home from school that night, the Plaintiffs telephoned the Suffolk County Police Department and filed a police report against Chris. After speaking with the Plaintiffs, the responding officers went to Chris's house and spoke to him and his parents.

Nonetheless, allegedly, the Defendants failed to take any action against Chris.

That same month, while riding on the bus, JEM's bus driver, a District employee, turned to JEM and said "fuck you." Upon learning this, RM and JM immediately contacted Murtha's office and left a message explaining what happened, but Murtha never called back and failed to take any action. Neither JEM, nor any of the other witnesses to this incident, were questioned about the bus driver's conduct. To date, no action has been taken against the bus driver.

B. Procedural History

On March 10, 2014, the Plaintiffs filed the instant action.

As stated above, on April 3, 2014, BOCES, Kempf, Smalling, and Celaberti moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

On May 30, 2014, the District, Groveman, Miller, Murtha, Flannigan, and Gamorano also moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

On August 8, 2014, the Plaintiffs moved pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint. As previously stated, the Court exercises its discretion to grant that motion and will consider the merits of the Defendants' motions in light of the amended complaint.

Of relevance here, the amended complaint asserts claims against the District and BOCES for discrimination and retaliation in violation of the ADA and the Rehabilitation Act. The amended complaint also asserts claims against the District and BOCES and against Groveman, Murtha, Smalling and Kempf in their individual capacities pursuant to 42 U.S.C. § 1983 for the violations of JEM's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Finally, the amended complaint asserts claims for negligent supervision, negligent hiring/retention, negligent performance of a governmental function and under New York's Dignity for Students Act. The Court will address these claims in turn.

## II.    DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 67, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). On a motion to dismiss, the Court "take[s] the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014).

A. The Plaintiffs' Claims of Discrimination and Retaliation Against the District and BOCES Under the ADA and the Rehabilitation Act

The Plaintiffs assert claims against the District and BOCES for discrimination and retaliation in violation of the ADA and the Rehabilitation Act.

1.  <u>Do RM and JM have Standing to Assert their ADA and Rehabilitation Act claims?</u>

As an initial matter, the Court addresses whether RM and JM may assert claims here on their own behalf under the ADA and Section 504 of the Rehabilitation Act. <u>See</u> <u>Cent. States Se. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.</u>, 433 F.3d 181 (2d Cir. 2005)("Because the standing issue goes to [a] Court's subject matter jurisdiction, it can be raised *sua sponte*.")(italics added).

The ADA and the Rehabilitation Act prohibit public entities from discriminating against an individual based on his or her association with a disabled person. 42 U.S.C. § 12112(b)(4). "The Second Circuit has not had occasion to construe the associational discrimination provision of the ADA." <u>Kouromihelakis v. Hartford Fire Ins. Co.</u>, No. 3:13CV888 (AWT), 2014 WL 4802962, at *3 (D. Conn. Sept. 29, 2014)(citation and quotation marks omitted).

However, in <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268 (2d Cir. 2009), the Second Circuit recognized a claim for associational discrimination under the Rehabilitation Act where the minor children of a deaf, hospitalized parent suffered injuries because the defendant hospital failed to provide a sign language interpreter for their parent. <u>Id.</u> at 281. Forced to serve as sign language interpreters for their disabled parent, the children were exposed to their parent's serious health condition and were forced to miss school and thus were "unnecessarily placed at risk for emotional trauma because of their young age." <u>Id.</u> Tracking the text of the Rehabilitation Act, the court held that the children themselves need not suffer discrimination in any program or activity receiving federal financial assistance, in order to find that they were "persons aggrieved." <u>Id.</u> at 280–82. Rather, they "need only establish that each suffered an injury independent from their parents that was causally related to the Hospital's failure to provide services to their parents." <u>Id.</u> at 280; <u>see also</u> <u>MX Group, Inc. v. City of Covington</u>, 293 F.3d

326, 335 (6th Cir. 2002)(holding that a drug treatment provider had standing to sue on its own behalf, without joining individual clients as plaintiffs, based on "injury it suffered as a result of its association with individuals with disabilities"); <u>Innovative Health Sys., Inc. v. City of White Plains</u>, 931 F. Supp. 222, 236 (S.D.N.Y. 1996)(opining that the ADA statute extending relief to "'[a]ny person alleging discrimination . . .' need not be an individual with a disability, but may be anyone injured by a covered entity's discrimination against an individual on the basis of that individual's disability.").

In this case, the amended complaint alleges that RM and JM were denied access to Celaberti and to the school grounds based on their association with JEM, their son with a disability. It may be that the Defendants took these actions against RM and JM not because of their association with JEM but because of the parents' alleged interference with certain school functions. However, such a determination, which goes to causality, is appropriately reserved for summary judgment or a factfinder at trial. In the Court's view, these allegations suffice to confer statutory standing on RM and JM for their ADA and Rehabilitation Act claims on their own behalf. <u>Cf.</u> <u>McGRX, Inc. v. Vermont</u>, No. 5:10-CV-1 (CR), 2011 WL 31022, at *6 (D. Vt. Jan. 5, 2011)("Because Plaintiff's generalized allegations of advocacy on behalf of disabled Medicaid recipients fail to state a claim for associational discrimination under the ADA and RA, and because Plaintiff has not otherwise established a violation of its own legally protected interests under the ADA and RA, Plaintiff's own discrimination claims must be dismissed."), <u>aff'd</u>, 452 F. App'x 74 (2d Cir. 2012).

It is true that, under New York State law, parents do not enjoy a protected liberty or property interest in unfettered access to their child's school grounds. <u>Jones v. Bay Shore Union Free Sch. Dist.</u>, 947 F. Supp. 2d 270, 279 (E.D.N.Y. 2013)("Access to school grounds, however,

is not a protected liberty or property interest."); <u>Pearlman v. Cooperstown Cent. Sch. Dist.</u>, No. 01–CV–0504, 2003 WL 23723827, at *3 (N.D.N.Y. June 11, 2003)("Plaintiff does not . . . cite to any state law or authority granting him unfettered access to school property, either as a citizen or a parent."); <u>Hone v. Cortland City Sch. Dist.</u>, 985 F. Supp. 262, 272 (N.D.N.Y. 1997)("Looking to New York State law, the court can find no support for the proposition that Plaintiff enjoyed any right of access to school property."); <u>Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.</u>, No. 93–CV–1924 (ADS), 1993 WL 762110, at *6 (E.D.N.Y. Dec. 10, 1993)("Here, state law does not give any property or liberty interest to the plaintiff to enter the school grounds."). However, it does not follow that school districts subject to the federal ADA and Rehabilitation Acts may deny parents access to school grounds on the basis of their association with a disabled child.

Having concluded that RM and JM have sufficiently alleged statutory standing with regarding to their ADA and Rehabilitation Act claims, the Court need not answer the question, unresolved by the Second Circuit, whether a parent may sue on their own behalf under the ADA and Section 504 for injuries suffered by their child. <u>A.M. ex rel. J.M. v. NYC Dep't of Educ.</u>, 840 F. Supp. 2d 660, 674 (E.D.N.Y. 2012)("Since <u>Winkelman[ ex rel. Winkelman v. Parma City School Dist.</u>, 550 U.S. 533, 127 S. Ct. 1994, 167 L. Ed. 2d 904 (2007)], federal courts have disagreed over whether the Supreme Court's decision to confer independent parental standing under the [Individuals with Disabilities Education Act, 20 U.S.C. § 1400, <i>et seq.</i> ("IDEA")] extends equally to claims brought by parents on their own behalf under Section 504 and the ADA.") <u>aff'd sub nom.</u> <u>Moody ex rel. J.M. v. NYC Dep't of Educ.</u>, 513 F. App'x 95 (2d Cir. 2013); <u>compare</u> <u>A.M. ex rel. J.M.</u>, 840 F. Supp. at 674 (conferring statutory standing under the ADA and Section 504 on parents for their claims for injuries suffered by their child) <u>and</u> <u>B.D.S.</u>

v. Southold Union Free Sch. Dist., Nos. CV–08–1319(SJF)(WDW), CV–08–1864 (SJF)(WDW), 2009 WL 1875942, at *15 (E.D.N.Y. June 24, 2009 (same) with Link ex rel. Link v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:12-CV-0472 (AAT), 2012 WL 4506028, at *5 (M.D. Tenn. Sept. 28, 2012)(disagreeing with A.M. decision and those courts that hold that Winkelman may be read to confer standing on parents to bring claims on their own behalf under the ADA and Rehabilitation Act because "Winkelman was, as the A.M. decision acknowledged, rooted in the text and statutory structure of the IDEA.") and Hooker v. Dallas Indep. Sch. Dist., No. 3:09–CV–0676–G–BH, 2010 WL 4025776, at *6 (N.D. Tex. Sept. 13, 2010)(same), adopted, 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010).

   2.  Has JEM Stated a Discrimination Claim Against the District and BOCES Under the ADA and the Rehabilitation Act?

On the merits, the Plaintiffs first contend that the District and BOCES, by and through the actions of their agents, were deliberately indifferent to the disability-related harassment of JEM by a fellow student and the bus driver so that the District and BOCES acquiesced in the harassment, and became liable for their acts.

Claims under Title II of the ADA and Section 504 of the Rehabilitation Act are analyzed identically. See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). The ADA and Rehabilitation Act were designed to protect disabled persons from discrimination, both intentional and unintentional, in the provision of public services. Under both statutes, schools are required to provide a free appropriate public education through special education and related services. See e.g., 34 C.F.R. § 104.33; 28 C.F.R. § 35.103.

To make out a *prima facie* case under the ADA or Rehabilitation Act, a plaintiff must show "(1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent statute]; and (3) that [he] was denied the opportunity to participate in or benefit

from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." Harris v. Mills, 572 F.3d 66, 73–74 (2d Cir. 2009). Denial of "the opportunity to participate in or benefit from defendants' services" does not require that the student be physically prevented from access: "[r]ather, a plaintiff must establish . . . harassment [by] students that is so severe, pervasive, and objectively offensive, and that so undermines and distracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 650–651, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999).

Here, the Defendants apparently do not dispute that the Plaintiffs have properly alleged that JEM is a qualified individual with a "disability" or that the District and BOCES are subject to the ADA and Section 504. Instead, the Defendants challenge whether the Plaintiffs have adequately plead a causal relationship between the Defendants' actions, or lack of actions, and JEM's disability.

As against the District and BOCES, the Plaintiffs may plead the third Harris element by alleging a statutory violation resulting from "deliberate indifference" by them to the rights secured to disabled persons by those statutes. Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98 (2d Cir. 2001)(citing Bartlett v. New York State Bd. of Law Exam'rs, 156 F.3d 321, 331 (2d Cir. 1998), vacated on other grounds, 527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790 (1999)).

"School district liability for peer-to-peer disability-based harassment under Section 504 and the ADA has not been directly addressed by the United States Supreme Court or the Second Circuit[;] however the Supreme Court has addressed school district liability for peer-to-peer sexual harassment in violation of Title IX." K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381

15

F. Supp. 2d 343, 359 (S.D.N.Y. 2005); see e.g., Davis v. Monroe, 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999); Pell v. Trustees of Columbia Univ., No. 97 Civ. 0193 (SS), 1998 WL 19989 (S.D.N.Y. Jan. 21, 1998)(finding that hostile educational environment claims apply the same standards as those of Title IX).

"Courts in the Second Circuit and elsewhere have subsequently applied the Supreme Court's holding in Davis to peer-on-peer harassment cases under the ADA and Section 504." Preston v. Hilton Cent. Sch. Dist., 876 F. Supp. 2d 235, 241-42 (W.D.N.Y. 2012); see e.g., S.S. v. Eastern Kentucky Univ., 532 F.3d 445, 454–454 (6th Cir. 2008)(applying the Davis "deliberate indifference" requirement to peer-on-peer harassment claims under the ADA and Section 504); K.M. ex rel. D.G., 381 F. Supp. 2d at 358 (same).

Here, before the Court considers whether the Plaintiffs have sufficiently alleged "deliberate indifference" on the part of District and BOCES employees to the alleged bullying and harassment of JEM by a fellow student and a bus driver, the Court must address whether the Plaintiffs have sufficiently alleged that JEM was harassed based on his disability. Even construing the amended complaint liberally and affording the Plaintiffs all favorable inferences, the Court concludes that they have not.

Indeed, the amended complaint, while replete with alleged instances of bullying of JEM by a fellow student and bus driver, is devoid of any allegation that the bullying was based on JEM's disability. Simply because a disabled person was bullied does not, without more, compel the conclusion that the bullying was "based on [JEM's] disability." M.S. ex rel. Shihadeh v. Marple Newtown Sch. Dist., No. CIV.A. 11-5857, 2015 WL 70920, at *8 n. 16 (E.D. Pa. Jan. 5, 2015)(rejecting the proposition that liability under the ADA and Section 504 may attach

whenever there is bullying of a disabled person, regardless of whether bullying was on account of the disability).

The Court notes that, in discussing the enactment of the Rehabilitation Act, the United States Supreme Court has observed that: "Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." Alexander v. Choate, 469 U.S. 287, 105 S. Ct. 712, 717, 83 L. Ed. 2d 661 (1985).  In this regard, the Court also takes note of a decision of another district court in this Circuit, T.K. v. New York City Dep't of Educ., 779 F. Supp. 2d 289, 303 (E.D.N.Y. 2011), which surveyed the lengthy history of school bullying case law and commentary in this country: "Studies have shown that students with a disability, whether it is visible or non-visible, are subject to increased bullying that is often directed at the disability.  These students are also at more risk for bullying directed at factors other than their disability.  Harassing conduct may take many forms, including verbal acts and name-calling, as well as nonverbal behavior, such as graphic written statements, or conduct that is physically threatening, harmful, or humiliating." Id. at 303 (internal citations omitted); see also Preston v. Hilton Cent. Sch. Dist., 876 F. Supp. 2d 235, 242 n. 2 (W.D.N.Y. 2012)(quoting T.K.).

However, even if students with disabilities are more likely to be bullied than students without disabilities, both based on their disabilities and based on other factors, a plaintiff nevertheless does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying.  To hold otherwise would convert the ADA and Rehabilitation Act into generalized anti-bullying statutes.

Here, the amended complaint does not offer a non-conclusory answer to the dispositive question posed by JEM's discrimination claim under the ADA and Section 504: Why did the

fellow student and bus driver bully JEM? Was it based on JEM's disability? Or was it based on some other reason, such as personal animus? See generally Hoffman v. Saginaw Pub. Sch., No. 12-10354 (TLL), 2012 WL 2450805, at *1 (E.D. Mich. June 27, 2012). The Defendants correctly observe that the facts alleged do not suggest that the reason JEM was harassed was because of his disability.

If the Plaintiffs' allegations are true, the District and BOCES's response to the Plaintiffs' complaints of bullying against JEM are nothing short of troubling. However, that alone does not state a viable ADA or Section 504 claim. The Plaintiffs have alleged no non-conclusory facts connecting the alleged bullying, and the District and BOCES's response or lack of response, to JEM's disabilities. Without factual allegations to support the alleged disability discrimination, dismissal of JEM's claims under the ADA and Section 504 is required.

3. Have RM and JM Stated an Associational Discrimination Claim Against The District and BOCES Under the ADA and Section 504?

Having concluded that JEM has failed to state a discrimination claim under the ADA and Section 504, it necessarily follows that the RM and JM's associational discrimination claim fails as well. See Jackson v. Illinois Dep't of Human Servs., No. 09 C 4194 (GF), 2011 WL 4501394, at *6 (N.D. Ill. Sept. 28, 2011).

4. Have RM and JM Stated a Retaliation Claim Against the District and BOCES Under the ADA and Section 504?

The ADA also prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by th[e][ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

"[T]he elements of a retaliation claim under either Section 504 or the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002)(internal quotations and citation omitted); see also Graham v. Women in Need, Inc., No. 13 CIV. 07063 (LGS), 2014 WL 2440849, at *4 (S.D.N.Y. May 30, 2014)(reciting elements).

In this case, the amended complaint alleges that in retaliation for RM advocating on behalf of her disabled son, JEM, Smalling contacted RM and advised her that Celaberti was directed to longer speak to RM or JM. The Plaintiffs further alleges that the District and BOCES, in retaliation for RM advocating on behalf of JEM and entering a school bus and admonishing a fellow student, prohibited her from entering school property. There are no allegations that either the District or BOCES took any retaliatory action against JEM.

In any event, RM and JM's retaliation claim against the District and BOCES fails for the simple reason that they never complained of discrimination in violation of the ADA and Section 504. Rather, their allegations demonstrate that while they complained about bullying of JEM, they did not complain that the bullying was on account of JEM's disability. For this reason, the Plaintiffs have not adequately alleged "protected activity" under the ADA and Section 504. Marecheau v. Equal Employment Practices Comm'n, No. 13-CV-2440 (VEC), 2014 WL 5026142, at *8 (S.D.N.Y. Sept. 30, 2014)("Plaintiff's March 26, 2012, grievance with the Union also post-dated the negative performance evaluation complained of in the April 2012 complaint and was not 'protected activity' under the ADA because the grievance was unrelated to discrimination on the basis of Plaintiff's alleged disability.); see Kelly v. Howard I. Shapiro &

Assoc. Consulting Eng'rs, P.C., 716 F.3d 10, 15–17 (2d. Cir. 2013)(to establish a *prima facie* claim of retaliation, a plaintiff must show that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII," even if the "underlying conduct complained of was not in fact unlawful" (quoting Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998)).

Accordingly, the Court dismisses the retaliation claims under the ADA and Section 504 against the District and BOCES.

B.  JEM's Section 1983 Equal Protection Claim

Pursuant to 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

"The text of the statute purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." Kalina v. Fletcher, 522 U.S. 118, 123, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997)(citing 42 U.S.C. § 1983).  Section 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." Gonzaga University v. Doe, 536 U.S. 273, 285, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002).  "'[O]ne cannot go into court and claim a 'violation of § 1983' for § 1983 by itself does not protect anyone against anything.'" Id. (quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979)); see Chapman, 441 U.S. at 618, 99 S. Ct. 1905 ("Standing alone, § 1983 clearly provides no

protection for civil rights since . . . § 1983 does not provide any substantive rights at all.").

Rather, Section 1983 was enacted to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)(citing Carey v. Piphus, 435 U.S. 247, 254–57, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978)). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295–96 (2d Cir. 1991)(citing Blum v. Yaretsky, 457 U.S. 991, 1003, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)); see Sybalski, 546 F.3d at 257 (holding that plaintiffs claiming violations of their constitutional rights pursuant to § 1983 are required to show state action).

Accordingly, "[b]y the plain terms of § 1983, two-and only two-allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980) (citing Monroe v. Pape, 365 U.S. 167, 171, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)).

There is no dispute that the Defendants at all times acted under color of state law. The question is whether the Plaintiffs have adequately alleged that they deprived JEM of a federally protected right.

JEM alleges that the Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "by failing to provide him with a harassment free educational setting, which in turn denied him the same educational opportunities and resources as his similarly situated non-disabled students enjoyed." (Proposed Amended Complaint, ¶¶ 18, 21, 33, 40, 47, 54, 113, 147).

The Fourteenth Amendment provides, in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1.

In <u>DiStiso v. Cook</u>, 691 F.3d 226 (2d Cir. 2012), the Second Circuit found that "claims of intentional [ ] discrimination can be based on the 'deliberate indifference' of school boards, administrators, and teachers to invidious harassment, in the school environment, of a student by other children or parents." <u>Id.</u> at 240–41; <u>see</u> <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 129 S. Ct. 788, 172 L. Ed. 2d 582, passim (2009)(finding equal protection claim under § 1983 for student-on-student sexual harassment due to deliberate indifference); <u>Gant v. Wallingford Bd. of Educ.</u>, 195 F.3d 134, 140 (2d Cir. 1999)("[I]n cases of alleged student-on-student harassment, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves."); <u>Faccio v. Eggleston</u>, No. 1:10-CV-699 (DNH), 2011 WL 3666588, at *10 (N.D.N.Y. Aug. 22, 2011)("A violation of the Equal Protection Clause by a state actor in the school setting can either be through direct action or due to deliberate indifference to student-on-student harassment.").

As an initial matter, the Court notes that to the extent JEM's claim of disability discrimination in violation of the equal protection clause is premised upon substantive rights provided by the ADA, the claim is not actionable under Section 1983. Lener v. Hempstead Pub. Sch., No. 12-CV-3340 (JFB)(SIL), 2014 WL 4809452, at *10 (E.D.N.Y. Sept. 23, 2014); Fierro v. N.Y.C. Dep't of Educ., 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014); EC ex rel. RC v. Cnty. of Suffolk, 882 F. Supp. 2d 323, 355 (E.D.N.Y. 2012)("ADA has its own right of enforcement and, consequently, an ADA action may not be brought pursuant to 42 U.S.C. § 1983."); Pape v. Bd. of Educ. of the Wappingers Cent. Sch. Dist., No. 07 Civ. 8828 (KMK), 2009 WL 3151200, at *6 (S.D.N.Y. Sept. 29, 2009)(granting motion to dismiss § 1983 claim on ground that "[t]he broad discriminatory claims alleged by Plaintiffs are, at best, the type of alleged discrimination that . . . the ADA [is] designed to protect against, not the Equal Protection Clause" (internal quotation marks omitted)).

That said, a plaintiff may bring a § 1983 claim premised upon substantive rights distinct from federal statutes, such as the ADA. Here, JEM maintains that the Defendants treated him differently from other similarly situated individuals, and thus violated his equal protection rights. "Disability and/or perceived disability are not suspect or quasi-suspect classifications." Lener, 2014 WL 4809452, at *11; O'Leary v. Town of Huntington, No. 11 Civ. 3754 (JFB), 2012 WL 3842567, at *14 (E.D.N.Y. Sept. 5, 2012)(collecting cases). Nevertheless, "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Sharpe

v. City of New York, No. 11 Civ. 5495 (BMC), 2013 WL 2356063, at *3 n. 5 (E.D.N.Y. May 29, 2013)(internal quotation marks and citations omitted).

In opposing the Defendants' motions to dismiss and moving for leave to amend the complaint, the Plaintiffs largely if not entirely abandon their "selective enforcement" equal protection claim. Indeed, the amended complaint omits any allegation that the District selectively enforced its anti-bullying policy by treating the Plaintiff differently than similarly-situated non-disabled students.

Properly framed, the Court takes the amended complaint, and in particular, JEM, to be asserting a "class of one" equal protection claim based on his "disability." In a "class of one" context, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose — whether personal or otherwise — is all but certain." Prestopnik v. Whelan, 249 Fed. Appx. 210, 212–13 (2d Cir. 2007). There must be "an extremely high degree of similarity" between the class of one plaintiff and "alleged comparators in order to succeed on an equal protection claim." Sloup v. Loeffler, 745 F. Supp. 2d 115, 128 (E.D.N.Y. 2010); see also Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), rev'd on other grounds, Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir. 2008).

"Specifically, such plaintiffs must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Camac v. Long Beach City Sch. Dist., No. 09 CV

5309 (DRH)(ARL), 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011)(citations and quotations marks omitted). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are *prima facie* identical." Kamholtz v. Yates Cnty., No. 08-CV-6210 (MAT), 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008)(italics added and quoting Neilson, 409 F.3d at 105 (internal quotation marks omitted)).

In this case, JEM does not offer any non-conclusory assertions that the Defendants discriminated against him because of his disability nor does he point to any similarly-situated students who were treated differently. Accordingly, the Court dismisses JEM's Section 1983 equal protection claims. Cf. O'Neill v. Hernandez, No. 08 Civ. 1689(KMW)(RLE), 2009 WL 860647, at *7 (E.D.N.Y. Mar. 31, 2009)(plaintiff stated a disability discrimination claim under the equal protection clause where he alleged that defendants treated him differently than non-disabled individuals because of his disability); Bendel v. Westchester Cnty. Health Care Corp., 112 F. Supp. 2d 324, 236-28 (S.D.N.Y. 2000)(plaintiff stated claim for denial of equal protection rights where she alleged that she was treated differently than similarly situated non-disabled employees); Petrosky v. New York Dep't of Motor Vehicles, 72 F. Supp. 2d 39, 61–62 (N.D.N.Y. 1999).

Having concluded that JEM does not state an equal protection cause of action under Section 1983, the Court need not address whether the District may be liable for any such claim under Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

C. Qualified Immunity for the Individual Defendants

Alternatively, the Individual Defendants raise the affirmative defense of qualified immunity from the damages claims because, they contend, their actions were objectively

reasonable and did not violate any clearly established rights. "Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights." Frego v. Kelsick, No. 11-CV-5462 (SJF)(SIL), 2015 WL 332126, at *2 (E.D.N.Y. Jan. 23, 2015)(quoting Reuland v. Hynes, 460 F.3d 409, 419 (2d Cir. 2006)).

Here, however, having concluded that the Plaintiffs fail to state a violation of the ADA, Section 504, or the Equal Protection Clause of the Fourteenth Amendment, the Court declines to address the Individual Defendants' entitlement to qualified immunity against any such claims.

D.  The Plaintiffs' State Law Claims

"Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)." Kaplan v. Elmendorf, No. 14-CV-2071 (SJF)(GRB), 2014 WL 1761560, at *5 (E.D.N.Y. Apr. 30, 2014); see Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1866–1867, 173 L. Ed. 2d 843 (2009)(holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc., 712 F.3d 705, 726 (2d Cir. 2013)("It is a truism of federal civil procedure that in providing that a district court 'may' decline to exercise [supplemental] jurisdiction, § 1367(c) is permissive rather than mandatory." (quotations, brackets and citation omitted)).

The Court is duty-bound to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over pendent state law claims. Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); see also Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 117–18 (2d Cir. 2013)(accord). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720; Lundy, 711 F.3d at 118 ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."); Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010)("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.")

In the case at bar, the Plaintiffs fail to articulate any reason supporting the exercise of supplemental jurisdiction by this Court over their state law claims. In light of the dismissal of all federal claims early in this action, and upon consideration of all relevant factors, namely judicial economy, convenience, fairness and comity, insofar as the amended complaint may be deemed to state any cognizable claims under state law, the Court declines to exercise supplemental jurisdiction over such claims. The Plaintiffs are advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of thirty (30) days after the date of this order, unless a longer tolling period is otherwise provided under state law.

## III. CONCLUSION

In this case, as disconcerting as the allegations leveled against the Defendants are, the Court reiterates that, absent legislative authorization to the contrary, claims of general harassment are not cognizable under the ADA, Section 504, or Section 1983 by way of the Fourteenth Amendment. See e.g. Holt v. Sams Club, 579 F. App'x 36, 37 (2d Cir. 2014)("The ADA, of course, does not protect against general harassment.").

For the foregoing reasons, the Court (1) grants the Plaintiffs' motion to amend the complaint; (2) treats the pending motions to dismiss the complaint for failure to state a cause of action as directed at the amended complaint; and (3) grants the motions to dismiss. The amended complaint is dismissed. The Plaintiffs' state law claims, in particular, are dismissed without prejudice to being refiled in state court. See Mathie v. Womack, No. 14-CV-6577 (JS) (GRB), 2015 WL 419802, at *3 (E.D.N.Y. Jan. 29, 2015)(declining, after dismissing lone federal claim, to exercise supplemental jurisdiction over state law claims and dismissing those claims without prejudice to being refiled in state court.).

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
February 6, 2015


　　　　　　　　　　　　　_Arthur D. Spatt_　　　　　　　　
　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　United States District Judge